# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* ) | Case No.  3:25-mc-00541 |
| Nvidia Shield and 8 Micro SD cards, currently in secure evidence storage at the U.S. Probation Office, located at 1000 SW Third Ave., Ste 340, Portland, OR ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Nvidia Shield streaming device and 8 Micro SD cards, currently in secure evidence storage at the U.S. Probation Office, located at 1000 SW Third Ave., Ste 340, Portland, OR, as described in Attachment A

located in the _____ District of _____ Oregon _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2252A(a)(5)(B) | Possessing and Accessing with the Intent to View Child Pornography |

The application is based on these facts:

See the attached affidavit of Task Force Officer Cheryl Banks, Federal Bureau of Investigation.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
(By telephone)
*Applicant's  signature*

Cheryl Banks, Task Force Officer, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone at 8:00 am _____ *(specify reliable electronic means).*

Date:  05/12/2025

City and state:  Portland, Oregon

_____
*Judge's signature*

Honorable Jolie Russo, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**Devices to Be Searched**

The following digital devices, seized on about March 25, 2025, currently in secure evidence storage at the U.S. Probation Office located at 1000 SW Third Ave, Suite 340, Portland, Oregon 97204:

Eight Micro SD cards

One Nvidia Shield streaming device

**Attachment A**

# ATTACHMENT B

## Items to Be Seized

1.      All records on the Devices described in Attachment A that relate to violations of Title 18, United States Code, Section 2252A(a)(5)(B) (Possession of or Accessing with the Intent to View Child Pornography) including:

    a.      All visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, including all motion pictures or digital video clips containing such visual depictions.

    b.      All video recordings which are self-produced and pertain to sexually explicit images of minors, or video recordings of minors which may assist in the location of minor victims of child exploitation or child abuse, or recordings that assist in the identification of user or owner attribution.

    c.      All records and information, including written or electronic correspondence or communications, pertaining to the production, transportation, shipment, distribution, receipt, trade, sale, purchase, or possession of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, or any attempt to commit any such offense.

    d.      All records or information that pertain to offers to transmit, the solicitation of a transmission, or the transmission, through interstate or foreign commerce by any means (including by computer), of any visual depiction of a minor engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

**Attachment B**                                                                                      **Page 1**

e.      All records or information naming or identifying minors visually depicted while engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

f.      Any records of internet usage, including records containing screen names, usernames, and e-mail addresses, and identities assumed for the purposes of communication on the internet.

g.      All records or information referring or pertaining to communications with others, whether in person, by telephone, or online, for the purpose of producing, distributing, transporting, receiving, or possessing child pornography as defined in 18 U.S.C. § 2256, including chat logs, call logs, address books or contact list entries, and digital images sent or received.

h.      All images and video clips of child erotica, defined as material or items that may be sexually arousing to persons having a sexual interest in children but that are not in and of themselves legally obscene and do not depict minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256, such as images of minors depicted in underwear or partially undressed; and

i.      Evidence of internet usage for the transportation, distribution, receipt, or access with intent to view child pornography as defined in 18 U.S.C. § 2256, including dates and times of usage; IP addresses; and usernames and passwords used to access the internet or any accounts via the internet.

j.      Evidence of any Peer-to-Peer software, including date and time of usage, and file sharing.

/ / /

**Attachment B**                                                                                   **Page 2**

2.    Evidence of user attribution showing who used or owned the Device at the time any item described in this attachment was created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, images, recordings and browsing history.

3.    Records evidencing the use of the internet, including:

a.    Records of Internet Protocol addresses used.

b.    Records of internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses.

c.    Records of data storage accounts and use of data storage accounts.

4.    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**Search Procedure**

5.    The examination of the Devices may require authorities to employ techniques, including computer-assisted scans of the entire medium that might expose many parts of the Devices to human inspection in order to determine whether it contains evidence described by the warrant.

6.    The initial examination of the Devices will be performed within a reasonable amount of time not to exceed 120 days from the date the warrant is executed.  If the government needs additional time to conduct this review, it may seek an extension of time from the Court within the original 120-day period from the date the warrant is executed.  The government shall

**Attachment B**                                                                                          **Page 3**

complete this review within 180 days of the date the warrant is executed.  If the government

needs additional time to complete this review, it may seek an extension of time from the Court.

7.      If, at the conclusion of the examination, law enforcement personnel determine

that particular files or file folders on a Device or image do not contain any data falling within the

scope of the warrant, they will not search or examine those files or folders further without

authorization from the Court.  Law enforcement personnel may continue to examine files or data

falling within the purview of the warrant, as well as data within the operating system, file

system, software application, etc., relating to files or data that fall within the scope of the

warrant, through the conclusion of the case.

8.      If an examination is conducted, and it is determined that the Devices do not

contain any data falling within the ambit of the warrant, the government will return the Devices

to the U.S. Probation Office within a reasonable period following the search and will seal any

image of the Devices, absent further authorization from the Court.

9.      If any Device contains evidence, fruits, or contraband, or is an instrumentality of a

crime, the government may retain that Device as evidence, or to commence forfeiture

proceedings against the Device and/or its data.

10.     The government will retain a forensic image of each Device for a number of

reasons, including proving the authenticity of evidence to be used at trial, responding to

questions regarding the corruption of data, establishing the chain of custody of data, refuting

claims of fabricating, tampering with, or destroying data, and addressing potential exculpatory

evidence claims where, for example, a defendant claims that the government avoided its

obligations by destroying data or returning it to a third party.


**Attachment B**                                                                                   **Page 4**

STATE OF OREGON )
       )  ss    AFFIDAVIT OF CHERYL BANKS
County of Multnomah )

### Affidavit in Support of an Application Under Rule 41 for a Warrant to Search Seized Digital Devices

I, Cheryl Banks, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1. I am a Detective employed by the City of Hillsboro Police Department and have been so employed since July 1993.   I am also a Task Force Officer with the Federal Bureau of Investigation (FBI) and have been so assigned since October 2002.   I am currently assigned to the Portland Division of the FBI where I investigate computer-related crimes.   I have received training in the investigation of computer, telecommunications, and other technology crimes. Since October 2002, I have been involved in the investigation of matters involving the sexual exploitation of children, including the online sexual exploitation of children, particularly as it relates to violations of Title 18, United States Code, Sections 2251, 2252A, and 2422.   I am part of the Portland Child Exploitation Task Force (CETF), which includes FBI Special Agents and local law enforcement officers.   CETF is an intelligence-driven, proactive, multi-agency investigative initiative to combat the proliferation of child pornography/child sexual exploitation facilitated by an online computer.   As a member of this task force, I have received training and certification from the FBI in areas related to investigating child pornography and other online child exploitation offenses.

2. I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search and examination of eight

**Affidavit of Cheryl Banks**                  **Page  1**

Micro SD cards and one Nvidia Shield streaming device (collectively, "the Devices"), described

in Attachment A, which are presently in evidence storage at the U.S. Probation Office, 1000 SW

Third Ave, Ste 340, Portland, OR, and the extraction of electronically stored information from the

Devices, as described in Attachment B.

3.      I have probable cause to believe that the items set forth in Attachment B

constitute contraband, and evidence and instrumentalities of violations of Title 18, United States

Code, Section 2252A(a)(5)(B) (Possessing or Accessing with the Intent to View Child

Pornography) (the "Target Offense").

4.      This affidavit is intended to show only that there is sufficient probable cause for

the requested warrant and does not set forth all my knowledge about this matter.   The facts set

forth in this affidavit are based on my own personal knowledge, knowledge obtained from other

individuals during my participation in this investigation, including other law enforcement

officers, interviews of witnesses, a review of records related to this investigation,

communications with others who have knowledge of the events and circumstances described

herein, and information gained through my training and experience.

### Applicable Law

5.      **Title 18, United States Code, Section 2252A(a)(5)(B)** makes it a crime to

knowingly possess or access with intent to view child pornography that has been mailed,

shipped, or transported in or affecting interstate or foreign commerce by any means, including by

computer, or that was produced using materials that were mailed, shipped, or transported in or

affecting interstate or foreign commerce by any means, including by computer.   The term child

pornography is defined in **Title 18, United States Code, Section 2256(8)** to mean "any visual

**Affidavit of Cheryl Banks**                                                                    **Page  2**

depiction, including any photograph, film, video, picture, or computer or computer generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct."   The terms visual depiction, sexually explicit conduct, and minor have the same meanings as defined in **Title 18, United States Code, Section 2256**.

### Background on Computers and Child Pornography

6.      Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers, computer technology, and the Internet have drastically changed the way child pornography is produced and distributed.

7.      Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage.

8.      Child pornographers can upload images or video clips directly from a digital camera to a computer.   Once uploaded, they can easily be edited, manipulated, copied, and distributed.   Paper photographs can be transferred to a computer-readable format and uploaded to a computer using a scanner.   Once uploaded, they too can easily be edited, manipulated, copied, and distributed.   A modem allows any computer to connect to another computer using a

**Affidavit of Cheryl Banks**                                                        **Page  3**

telephone, cable, or wireless connection.   Through the Internet, electronic contact can be made to literally millions of computers around the world.

9.      The computer's ability to store images in digital form makes it an ideal repository for child pornography.   The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at a very high resolution.   Images and videos of child pornography can also be stored on removable data storage media, such as external hard drives, thumb drives, media cards, and the like, many of which are small and highly portable and are easily concealed, including on someone's person.

10.      The Internet affords collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion, including Internet Relay Chat, instant messaging programs, bulletin board services, e-mail, and "peer-to-peer" ("P2P") file sharing programs such as LimeWire, eMule, and networks such as eDonkey, Gnutella, and BitTorrent, among others.   Collectors and distributors of child pornography also use online resources such as "cloud" storage services to store and retrieve child pornography.   Such online services allow a user to set up an account with a remote computing service that provides e mail services as well as electronic storage of computer files in a variety of formats.   A user can set up an online storage account from any computer with access to the Internet.   Evidence of such online storage of child pornography is often found on the user's computer.

11.      As with most digital technology, communications made from a computer are often saved or stored on that computer.   Storing this information can be intentional, for example,

**Affidavit of Cheryl Banks**                                                    **Page  4**

by saving an e mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files.   Digital information can also be retained unintentionally.   Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others.   In addition to electronic communications, a computer user's Internet activities generally leave traces in the computer's web cache and Internet history files.   Such information is often maintained indefinitely until overwritten by other data.

12.    I know based on my training and experience and based on conversations I have had with others who investigate child exploitation offenses, that people who have a sexual interest in children, including persons who collect and trade in child pornography, often receive sexual gratification from images and video clips depicting the sexual exploitation of children. They may also use such images and videos to lower the inhibitions of children who they wish to sexually abuse.   Such persons maintain their collections of child pornography in safe, secure, and private locations, such as their residence, and on computers and digital storage media under their direct control.   Such persons often maintain their collections, which are considered prized possessions, for long periods of time, and prefer not to be without their collections for any prolonged period of time.   In some recent cases, however, some persons with a sexual interest in children have been found to download and delete child pornography on a cyclical and repetitive basis, rather than storing a collection of child pornography indefinitely.

13.    Importantly, evidence of such activity, including deleted child pornography, can often be located on these individuals' computers and digital devices using forensic tools.

**Affidavit of Cheryl Banks**                                                                                    **Page 5**

Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.

## Statement of Probable Cause

14.     On or about July 21, 2010, Bryan Dean Coffman pled guilty Possession of Child Pornography, in District of Oregon case number CR 09-451-01-MO.   COFFMAN was sentenced to 70 months' imprisonment followed by a ten-year term of supervised release. COFFMAN was released on or about March 24, 2017, under the following conditions as set forth in his 2010 Judgement and Commitment:

- Defendant shall not view, purchase, or possess any child pornography, as defined at 18 USC 2256(8), involving a minor under age 18.

- The defendant is prohibited from using or possessing any computer(s) (including any handheld computing device, any electronic device capable of connecting to any on-line service, or any data storage media) without the prior written approval of the U.S. Probation Officer.   This includes, but is not limited to, computers at public libraries, internet cafes, or the defendant's place of employment or education.

- The defendant is prohibited from accessing any on-line computer service at any location (including employment or education) unless approved by the Probation Officer and the Court.

15.     On March 25, 2025, U.S. Probation Officers John Suhocki and John Wood conducted a home visit at COFFMAN's residence during which they located and seized nine devices that had not been disclosed to the Probation Office.   Of the nine devices seized from

**Affidavit of Cheryl Banks**                                                          **Page  6**

COFFMAN, one device, a Nvidia Shield streaming device, was found inserted into a computer monitor, and the remaining eight devices (Micro SD cards) were discovered on COFFMAN's person, in an Altoids mints container, wrapped in a paper towel.   One of the Micro SD cards contained Child Sexual Abuse Material (CSAM).   A forensic report generated by the U.S. Probation and Pretrial Services Office Cyber Investigations Unit, located in the Central District of California, detailed those findings.

16.     The examiner located over twelve (12) CSAM images, over 12 images of Computer Generated (CGI) CSAM, over twenty-four (24) images of child erotica and over 12 images of adult pornography on a **PNY Micro SD Card, Model SDDR-113**.

17.     The images of suspected CSAM were located primarily in the file cache.   The file cache is a reserved storage location used to temporarily store data for the purpose of facilitating quick and efficient access to the data.   This is typically not stored purposefully by the user, but rather by the application or device.   Images are typically not stored in the cache unless they were opened or viewed on a particular device.   If a user views images on the device without saving them to the device, or deletes images from the device, there may still be data/evidence of those images located in the file cache.   Two examples of suspected images of CSAM the examiner found in the cache are as follows:

> File Name:     ddd26b5cfa30b8c6359b5804c64a1bcd.png
> Type:   PNG Image
> Created Date:   2/18/2025 1:48:43 PM
> Path:     \home\booboo\.cache\thumbnails\normal\
> Description:     This image appears to depict a young girl, approximately between the age of 8 and 13 years old, sitting on a nude adult male who is laying down. The girl appears to be holding the man's penis.   There are at least 12 images that appear to depict the same girl and adult male.

**Affidavit of Cheryl Banks**                                                                 **Page  7**

File Name:    d89836333515e7b77340bb477ed8d76b.png
Type:  PNG Image
Created Date:  2/18/2025 1:48:43 PM
Path:   \home\booboo\.cache\thumbnails\normal\
Description:    This image appears to depict the same young girl from ddd26b5cfa30b8c6359b5804c64a1bcd.png, performing fellatio on the male's erect penis.   This photo appears to be part of the same series of photos previously referenced.

18.    The examiner located numerous images of child erotica located on the device. Child erotica is material that is arousing to people with a sexual interest in children, but that does not depict sexually explicit conduct, or does not rise to the level of child pornography.   An example is provided below.

File Name: E3851847AF2066B8575E12C57FA9E4D7D5BCFE94-blob
Created Date:  2/19/2025 10:24:50 AM
Path:   \home\booboo\.cache\epiphany\WebKitCache\Version 17\Records\448DB6FD299A3BC6C2186AB5D66CFAB456E9B87A\Resource
Description: This image appears to depict a young girl between the ages of 3 and 8 years old, standing and facing the camera.   The young girl is posing topless, wearing only underwear, and smiling. Her nude torso is fully visible. This file was also located in a cache folder on the device.

19.    Various artifacts of interest were installed on COFFMAN's device related to the usage of the Brave Browser.   The Brave Browser is a web browser that describes itself as a browser that "blocks ads and trackers that slow you down and invade your privacy." Additionally, the Brave Browser offers the ability to browse privately using Tor.   According to the Tor website, "Tor Browser uses the Tor network to protect your privacy and anonymity." Use of the Tor browser allows a user to access "Onion Services," also known as "hidden services," which operate like websites that are only accessible through the Tor network.   IP addresses are hidden, making it difficult to identify users of the Tor network and browser, and all

**Affidavit of Cheryl Banks**                                                            **Page 8**

traffic is end-to-end encrypted.   The use of Tor has become associated with the Dark Web, the

part of the internet that is not indexed by traditional search engines.   Furthermore, the Dark Web

is often associated with illegal activities, including the sale of drugs, weapons, counterfeit items,

malware, hacking, and the distribution of child sex abuse material.   By default, the Tor Browser

does not keep any browsing history.   There was a photo of the Tor browser on the Micro SD

card.

### Electronic Records

20.     As described above and in Attachment B, this application seeks permission to

search for records that might be found on the Devices, in whatever form they are found.   One

form in which the records will likely be found is data stored on internal storage media. Thus, the

warrant applied for would authorize the seizure of electronic storage media or the copying of

electronically stored information, all under Rule 41(e)(2)(B).

21.     The Devices are currently in secure evidence storage at the U.S. Probation Office

(USPO), located at 1000 SW Third Ave, Ste 340, Portland, OR  97204.   In my training and

experience, I know that the Probation Office typically stores seized electronic devices in a

manner in which the data stored on the devices remains the same as when the Devices were first

seized.

22.     In my training and experience, examining data stored on devices of this type can

uncover, among other things, evidence that reveals or suggests who possessed or used the device.

23.     I have probable cause to believe that things that were once stored on the Devices

will still be stored there because, based on my knowledge, training, and experience, I know:

**Affidavit of Cheryl Banks**                                                                                    **Page  9**

a.    Electronic files or remnants of such files can be recovered months or even years after they have been downloaded, deleted, or viewed via the internet.   Electronic files downloaded to a storage medium can be stored for years at little or no cost.   Even when files have been deleted, they can be recovered months or years later using forensic tools.   When a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.   Therefore, deleted files or remnants of deleted files may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.   In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

b.    Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.   This forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.   Computer users typically do not erase or delete this evidence, because special software is typically required for that task.   However, it is technically possible to delete this information.

c.    Similarly, files that have been viewed via the internet are sometimes automatically downloaded into a temporary internet directory or "cache," even if they are not saved to the device by the user.

24.    As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes

**Affidavit of Cheryl Banks**                                                                              **Page  10**

described on the warrant but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used the Devices, and when.   I have probable cause to believe that this forensic electronic evidence will be on the Devices because, based on my knowledge, training, and experience, I know:

      a.      Data on the Devices can provide evidence of a file that was once on the Devices but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).   Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.   Web browsers, email programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use.   Computer file systems can record information about the dates files were created and the sequence in which they were created.

      b.      Forensic evidence on a device can also indicate who has used or controlled the device.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.   For example, registry information, configuration files, user profiles, email, email address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the device at a relevant time.   Further, forensic evidence on a device can show how and when the device was accessed or used.   Such "timeline" information allows the forensic

analyst and investigators to understand the chronological context of access, use, and events relating to the crime under investigation.   This "timeline" information may tend to either inculpate or exculpate the device user.   Last, forensic evidence on a device may provide relevant insight into the device user's state of mind as it relates to the offense under investigation.   For example, information on a device may indicate the user's motive and intent to commit a crime (e.g., relevant web searches occurring before a crime indicating a plan to commit the same), consciousness of guilt (e.g., running a "wiping program" to destroy evidence on the device or password protecting or encrypting such evidence in an effort to conceal it from law enforcement), or knowledge that certain information is stored on a computer (e.g., logs indicating that the incriminating information was accessed with a particular program).

c.       A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.       The process of identifying the exact electronically stored information on a storage medium necessary to draw an accurate conclusion is a dynamic process.   Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.   Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves.   Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.       Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not

**Affidavit of Cheryl Banks**                                                              **Page  12**

present on a storage medium.   For example, the presence or absence of counter-forensic

programs or anti-virus programs (and associated data) may be relevant to establishing the user's

intent.

        f.     I know that when an individual uses a digital device to commit a crime

such as accessing or possessing child pornography, the individual's digital device will generally

serve both as an instrumentality for committing the crime and also as a storage medium for

evidence of the crime.   The digital device is an instrumentality of the crime because it is used as

a means of committing the criminal offense.   The digital device is also likely to be a storage

medium for evidence of the crime.   From my training and experience, I believe that a digital

device used to commit a crime of this type may contain data that is evidence of how the digital

device was used; data that was sent or received; notes as to how the criminal conduct was

achieved; records of Internet discussions about the crime; and other records that indicate the

nature of the offense.

### Nature of the Examination

25.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am

applying for would permit the examination of the Devices consistent with the warrant.   The

examination may require authorities to employ techniques, including computer-assisted scans of

the entire medium that might expose many parts of the Devices to human inspection in order to

determine whether it is evidence described by the warrant.

26.    The initial examination of the Devices will be performed within a reasonable

amount of time not to exceed 120 days from the date the warrant was executed.   If the

government needs additional time to conduct this review, it may seek an extension of time from

**Affidavit of Cheryl Banks**                         **Page  13**

the Court within the original 120-day period from the date the warrant was executed.   The

government shall complete this review within 180 days of the date the warrant was executed.   If

the government needs additional time to complete this review, it may seek an extension of time

from the Court.

27.     If, at the conclusion of the examination, law enforcement personnel determine

that particular files or file folders on the Devices or image do not contain any data falling within

the scope of the warrant, they will not search or examine those files or folders further without

authorization from the Court.   Law enforcement personnel may continue to examine files or data

falling within the purview of the warrant, as well as data within the operating system, file

system, software application, etc., relating to files or data that fall within the scope of the

warrant, through the conclusion of the case.

28.     If an examination is conducted, and it is determined that the Devices do not

contain any data falling within the ambit of the warrant, the government will return the Devices

to the U.S. Probation Office within a reasonable period of time following the search and will seal

any image of the Devices, absent further authorization from the Court.

29.     If the Devices contains contraband or evidence, fruits, an instrumentality of a

crime, the government may retain the Devices as evidence, or to commence forfeiture

proceedings against the Devices and/or the data contained therein.

30.     The government will retain a forensic image of the Devices for a number of

reasons, including proving the authenticity of evidence to be used at trial, responding to

questions regarding the corruption of data, establishing the chain of custody of data, refuting

claims of fabricating, tampering, or destroying data, and addressing potential exculpatory

**Affidavit of Cheryl Banks**                                                                              **Page  14**

evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**Conclusion**

31.    Based on the foregoing, I have probable cause to believe that the Devices described in Attachment A contain contraband and evidence of violations of Title 18, United States Code, Section 2252A(a)(5)(B) (Possessing or Accessing with the Intent to View Child Pornography), as set forth in Attachment B.   I therefore request that the Court issue a warrant authorizing a search of the Devices described in Attachment A for the items listed in Attachment B and the seizure and examination of any such items found.

32.    Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Gary Sussman.   AUSA Sussman told me that he believed the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

*/s/ by Telephone*
CHERYL BANKS
Task Force Officer
Federal Bureau of Investigation

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at

8:00 _____ am/~~pm~~ on May 12 , 2025.

Jolie A. Russo
THE HONORABLE JOLIE RUSSO
United States Magistrate Judge

**Affidavit of Cheryl Banks**                                                    **Page  15**